UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON MITCHELL,

    Plaintiff,

v.                                                        Case No.: 8:10-cv-1421-T-24-TGW

BELLSOUTH ADVERTISING &
PUBLISHING CORPORATION d/b/a
AT&T ADVERTISING SOLUTIONS,

    Defendant.

_____/

**<u>ORDER</u>**

      This cause comes before the Court on Defendant BellSouth Advertising & Publishing Corporation's ("BellSouth") Motion for Summary Judgment filed on May 6, 2011. (Doc. Nos. 16, 17.) When Plaintiff Jason Mitchell did not file a timely response to the motion, the Court entered a show cause order, directing him to respond by June 10, 2011, or else the Court would consider the motion to be unopposed. (Doc. No. 19.) To date, Mitchell has not responded to the motion.

      Jason Mitchell, who is white, filed this reverse race discrimination action on June 23, 2010. He alleges that BellSouth, his former employer, wrongfully terminated his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the Florida Civil Rights Act, Fla. Stat. Ann. § 760.10, et. seq. ("FCRA"). BellSouth moves for summary judgment on the grounds that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. In support of its motion, BellSouth relies on the pleadings filed in this case,

Mitchell's deposition, and the Declaration of Gregory Meineke.

**I.      Facts**

The following undisputed facts are established in the record: Jason Mitchell is a former employee of BellSouth who worked in Tampa as an Area Sales Manager. As a manger, he supervised employees who held the title of Directory Advertising Sales Representatives ("DASRs"). DASRs sell print advertising in telephone directories and advertising on AT&T's YellowPages.com web page. DASRs are represented by the Communications Workers of America and are employed pursuant to a collective bargaining agreement.

In late 2008, BellSouth received an anonymous complaint from someone who identified herself as a female employee in the Tampa office. She complained that two managers in that office were creating a hostile work environment by sending emails of a sexual nature. BellSouth investigated the complaint and discovered that emails of a sexual nature were sent by three managers, including Mitchell. Each of the managers was interviewed and admitted sending the emails.

BellSouth's Code of Business Conduct prohibits jokes and innuendo about sex and using company email to transmit sexual messages or pictures. Specifically, the Code of Business Conduct prohibits the "[t]ransmission of sexual messages or pictures via . . . e-mail." It furthermore warns employees, "Even if they seem funny or entertaining to you, e-mails containing inappropriate jokes or pictures can create a hostile work environment and amount to harassment." Mitchell admitted that he sent emails containing sexual jokes and images, despite knowing that the company's Code of Business Conduct prohibited such conduct.

After consulting with the company's Human Resources Department, Gregory Meineke,

who was BellSouth's Vice President for Sales, decided to terminate the employment of all three managers, including Mitchell, for violating the company's email policy. BellSouth later hired two white managers to replace the three managers who were terminated.

While this investigation was ongoing, BellSouth also investigated allegations that three DASRs were violating the company's conflict of interest policy by running a competing internet advertising business. The DASRs who were investigated are African-American. At the conclusion of this investigation, Gregory Meineke decided not to terminate the three DASRs, but instead, to give them a lower level of discipline. This decision was made because BellSouth could not confirm that the DASRs were covered by the Code of Business Conduct, and because it was the company's practice to impose a lower level of discipline to first-time violators of the conflict of interest policy by ordering the violators to discontinue their involvement in the competing venture. Furthermore, BellSouth was concerned that the DASRs would have the opportunity to grieve and arbitrate their terminations under the terms of their collective bargaining agreement.

## II.     Discussion

BellSouth moves for summary judgment on Mitchell's claim that he was terminated because of his race. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials." Fed. R. Civ. P. 56(c).

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise [] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). To evaluate a race discrimination claim supported by circumstantial evidence, the Court uses the traditional *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), burden-shifting analysis. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Under this framework, the plaintiff must raise an inference of discrimination by establishing a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. at 1824. The burden then shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the alleged discrimination. *Id.* Once the defendant produces such a reason, the plaintiff must then prove that the legitimate reason was a mere pretext for discrimination. *Id.* at 804, 93 S. Ct. at 1826. To avoid summary judgment, the plaintiff must produce sufficient evidence to show "that the employer intentionally discriminated against him because of his race." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

Here, Mitchell cannot establish a prima facie case of race discrimination, or that BellSouth's legitimate, non-discriminatory reason for terminating him was a pretext to mask unlawful race discrimination.

### A. Mitchell Cannot Establish a Prima Facie Case of Race Discrimination

To establish a prima facie case of disparate treatment in a reverse race discrimination case, the plaintiff must show that: (1) he was a member of a class; (2) he was qualified for the job; (3) he was subject to an adverse employment action; and (4) a similarly-situated employee

outside his class was treated more favorably. *See Smith v. Sunbelt Rentals, Inc.,* 356 Fed. Appx. 272, 277 (11th Cir. 2009); *Dockery v. Nicholson*, 170 Fed. Appx. 63, 65 (11th Cir. 2006) (citing *Shealy v. City of Albany*, 89 F.3d 804, 805 (11th Cir. 1996)). BellSouth contends that Mitchell cannot satisfy the final element of the prima facie case because he cannot show that a similarly situated African-American employee was treated more favorably than him.

In cases in which the plaintiff alleges race discrimination "in the application of discipline for violation of work rules, the plaintiff . . . must show either:"

> (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside [his] class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct.

*Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). The Eleventh Circuit "require[s] that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *see also Holifield*, 115 F.3d at 1562 (stating that to make a comparison, the plaintiff must show that he and the comparable employee are "similarly situated in all relevant respects").

Here, Mitchell has not established a prima facie case of reverse race discrimination because he has failed to show that a similarly-situated employee outside his class was treated more favorably in the terms or conditions of employment. From reviewing Mitchell's complaint, his EEOC charge, and his deposition, the Court has discerned that Mitchell's argument is that three African-American DASRs were treated more favorably than him when they were found to have violated BellSouth's conflict of interest policy but were not terminated.

This is insufficient to meet the standard of the final element of the prima facie case. The

undisputed record shows that Mitchell sent emails containing sexual jokes and images, that he admitted sending the emails, and that such conduct violated BellSouth's policy prohibiting the transmission of sexual messages or pictures. The record also shows that three African-American DASRs under Mitchell's management were discovered to have been engaged in a competing internet advertising business. The Code of Business Conduct contains a conflict of interest policy that prohibits employees from running competing businesses. Those DASRs, however, were not terminated because BellSouth could not confirm that they were covered by the Code of Business Conduct, because it was company practice to impose a lower level of discipline for first-time offenders of the conflict of interest policy and instead require them to cease their competing business, and because the DASRs were union employees.

      Mitchell is not similar to the African-American DASRs in "all relevant respects." *Holifield*, 115 F.3d at 1562. Not only was Mitchell's misconduct different from that of the DASRs, but the DASRs also differed in terms of rank and job title. Mitchell violated the company's email policy, while the DASRs violated the company's conflict of interest policy. Mitchell was a non-union manager, while the DASRs were sales representatives represented by a union. Mitchell has not shown that he "engaged in misconduct similar to that of a person outside [his] class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct." *Jones*, 874 F.2d at 1540. Furthermore, Mitchell has not identified–and the record does not reveal–any other non-white BellSouth manager who violated the company's policy against the transmission of sexual messages or pictures via email and was not terminated. Accordingly, BellSouth is entitled to judgment as a matter of law because Mitchell has not established a prima facie case of reverse

race discrimination.

      **B.**      **Mitchell Cannot Establish Pretext**

Even assuming that Mitchell could establish a prima facie case of reverse race discrimination, he has not shown that BellSouth's legitimate, non-discriminatory reason for terminating his employment–his violation of the company's email policy–was pretextual. "A plaintiff may show pretext either by directly persuading the court a discriminatory reason motivated the defendant, or by indirectly showing the employer's proffered explanation is unworthy of credence." *Johnson v. Switch & Data Mgmt. Co., LLC*, 199 Fed. Appx. 834, 835 (11th Cir. 2006). The relevant question is whether the proffered reason is a cover-up for discrimination. *Id.* In determining whether the plaintiff has established pretext, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.*

There is no evidence in the record that BellSouth's decision to terminate Mitchell was discriminatory. Mitchell testified that, during the meeting in which he was terminated, race was not mentioned. He further testified that he never heard any derogatory comments about his race from any manager, and that he never complained of any racially derogatory comments being made. The record simply does not reveal any evidence that anyone at BellSouth was motivated to terminate Mitchell because of his race. To the contrary, the undisputed record shows that BellSouth discovered that Mitchell sent sexual jokes and images via email, that such conduct

violated the company's code of conduct, and that the decisonmaker, Gregory Meineke, believed that Mitchell's violation warranted termination. Mitchell's conclusory allegation that he was terminated because of his race, "without more, [is] not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young v. General Foods*, 840 F.2d 825 (11th Cir. 1988) (quotations, citations, and alterations omitted). Mitchell may disagree with BellSouth's decision to terminate him, thinking that his misconduct was minor and did not warrant as severe a punishment as termination. However, the Court does "not sit as a super-personnel department that reexamines an entity's business decision;" rather, the "inquiry is limited to whether the employer gave an honest explanation of its behavior." *Chapman*, 229 F.3d at 1030. BellSouth has done so.

### III. Conclusion

It is **ORDERED AND ADJUDGED** that Defendant BellSouth's Motion for Summary Judgment (Doc. No. 16) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant BellSouth Advertising & Publishing Corporation and against Plaintiff Jason Mitchell, and to close this case. The pretrial conference previously scheduled for August 11, 2011 is cancelled, and this case is removed from the Court's September 2011 trial calendar.

**DONE AND ORDERED** at Tampa, Florida, this 27th day of June, 2011.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of record